UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BARRY J. BADEAUX                                    CIVIL ACTION

VERSUS                                                   NO. 20-2348

LOUISIANA-I GAMING, ET AL.                    SECTION "R" (3)


**ORDER AND REASONS**


Before the Court is defendant Louisiana–I Gaming's motion for summary judgment.[1]  Plaintiff Barry Badeaux opposes the motion.[2]  Because there is no genuine dispute of material fact as to defendant's liability, the Court grants defendant's motion.


## I.    BACKGROUND

This case arises from a fall in the parking lot of Boomtown Casino New Orleans.[3]  Plaintiff Barry Badeaux alleges that, around 3:00 a.m. on November 30, 2019, while exiting his vehicle and walking toward the casino, he tripped on a sprinkler head, and fell to the ground, sustaining injuries.[4]

---

[1]    R. Doc. 32.
[2]    R. Doc. 42.
[3]    R. Doc. 1-2 at 1-2.
[4]    *Id.*

Plaintiff alleges that the location and design of the exposed sprinkler head created an unreasonably dangerous condition.[5]

Plaintiff sued Louisiana-I Gaming,[6] and its insurer, Pinnacle National Insurance Company, for damages stemming from his injuries in the casino parking lot.[7]  Louisiana-I Gaming now moves for summary judgment on the basis that the sprinkler head was an "open and obvious" condition, and that plaintiff cannot establish that the sprinkler head was the cause-in-fact of his accident.[8]  Plaintiff opposes the motion.[9]  The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a

---

[5]   *Id.* at 2-3.

[6]   In plaintiff's petition for damages, he represents that Louisiana-I Gaming "owns and/or operates the Boomtown Belle Casino Westbank." *Id.* at 1.

[7]   R. Doc. 1 ¶ 1.

[8]   R. Doc. 32-2.

[9]   *Id.*

dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).  "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a

genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

Plaintiff sued Louisiana-I Gaming for negligence under both Louisiana's premises liability statute, La. Civ. Code art. 2317.1, and the

4

Louisiana Merchant Liability Act, La. Rev. Stat. Ann. § 9:2800.6.[10]

Louisiana's premises liability statute states in pertinent part:

> The owner or custodian of a thing is answerable for damage
> occasioned by its ruin, vice, or defect, only upon a showing that
> he knew or, in the exercise of reasonable care, should have known
> of the ruin, vice, or defect which caused the damage, that the
> damage could have been prevented by the exercise of reasonable
> care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 2317.1.  Under this statute, plaintiff bears the burden of

proving: (1) that the defendant knew, or in the exercise of reasonable care,

should have known of the defect which caused the damage, (2) that the

damage could have been prevented by the exercise of reasonable care, and

(3) that defendant failed to exercise reasonable care.  *Id.*

Louisiana Revised Statute § 9:2800.6 governs the "[b]urden of proof

in claims against merchants" when a plaintiff alleges that the merchant's

negligence caused the plaintiff to be injured on the merchant's premises.  A

casino is considered a merchant for purposes of this statute.  *Richardson v.

La.-I Gaming*, 55 So. 3d 893, 895 (La. Ct. App. 2010).  To prove a negligence

claim under this statute, the plaintiff must show that (1) the condition

presented an unreasonable risk of harm to the claimant and that risk of harm

was reasonably foreseeable, (2) the merchant either created or had actual or

---

[10]     *Id.*

constructive notice of the condition which caused the damage, before the occurrence, and (3) the merchant failed to exercise reasonable care.  La. Rev. Stat. Ann. § 9.2800.6.

Under either theory of liability, a plaintiff must prove that: "(1) the defendant either owned or had care, custody, or control of the thing in question; (2) the thing was a cause-in-fact of the plaintiff's injuries; and (3) the thing presented an unreasonable risk of harm."  *Llorence v. Broadmoor Shopping Ctr., Inc.*, 76 So. 3d 134, 137 (La. App. 3 Cir. 2001) (quoting *Bethea v. Great Atl. & Pac. Tea Co.*, 22 So. 3d 1114, 1115 (La. App. 4 Cir. 2009)).

Here, defendant argues that plaintiff cannot establish a genuine issue of material fact as to whether the sprinkler head created an unreasonable risk of harm, because the sprinkler was "open and obvious."[11]  In determining whether a defect presents an unreasonable risk of harm, courts should inquire whether the defect is "open and obvious to all who encounter it." *Broussard v. State ex rel. Off. of State Bldgs.*, 113 So. 3d 175, 183-85 (La. 2013).  And when determining whether a paving defect is "open and obvious," courts should specifically consider the size of the defect, its location, and the accident history of the defect.  *Leonard v. Sam's West, Inc.*, No. 11-846, 2013 WL 121761, at *3 (E.D. La. Jan. 9, 2013) (citing *Reed v. Wal-*

---

[11]      R. Doc. 32-2 at 8-14, 17-18.

*Mart Stores, Inc.*, 708 So. 2d 362, 363-64 (La. 1998)).  If the defect is "open and obvious," it is likely not unreasonably dangerous, because "the probability of injury is low and the thing's utility may outweigh the risks caused by its defective condition."  *Broussard*, 113 So. 3d at 184; *see also Thibodeaux v. Home Depot U.S.A., Inc.*, 816 F. App'x 988, 990 (5th Cir. 2020) (per curiam) ("[A] condition does not present an unreasonable risk of harm when it is an open and obvious risk.").

"If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff." *Eisenhardt v. Snook*, 8 So. 3d 544, 544 (La. 2009) (per curiam). This is because, under Louisiana law, a defendant does not have a duty to protect against "that which is obvious and apparent." *Broussard*, 113 So. 3d at 184.  This is true under both premises and merchant liability.  *See, e.g.*, *Schultz v. Rouse's Enters., L.L.C.*, No. 20-2830, 2021 WL 2533025, at *3 n.27 (E.D. La. June 21, 2021) (noting that the "open and obvious" doctrine "applies with equal force" under both La. Civ. Code art. 2317.1 and La. Rev. Stat. § 9:2800.6).  "[I]n a trip and fall case, the duty is not solely with the landowner," but is shared with the pedestrian who "has a duty to see that which should be seen[,] and is bound to observe whether the pathway is clear." *Babino v. Jefferson Transit*, 110

So. 3d 1123, 1126 (La. App. 5 Cir. 2013); *Hutchinson v. Knights of Columbus, Council No. 5747*, 866 So. 2d 228, 235 (La. 2004) ("A landowner is not liable for any injury which results from a condition which should have been observed by the individual in the exercise of reasonable care or which was as obvious to a visitor as it was to the landowner.").

As an initial matter, plaintiff argues that the question of whether the sprinkler head was an open and obvious hazard is a question of fact to be decided by a factfinder, not by the Court on summary judgment.[12]   But Louisiana case law makes clear that summary judgment may be appropriate "in cases where the plaintiff is unable to produce factual support for his or her claim that a complained-of condition or thing is unreasonably dangerous." *Allen v. Lockwood*, 156 So. 3d 650, 653 (La. 2015) (per curiam); *see also Leonard*, 2013 WL 121761, at *3 ("[I]n the summary judgment context, Louisiana courts have not hesitated to grant summary judgment in favor of defendants in cases in which the nature of the condition is undisputed, and plaintiff has provided no evidence of any unusual feature of the condition suggesting that it is unreasonably dangerous.").   The appropriateness of summary judgment in this case thus turns on whether

---

[12]     R. Doc. 42 at 4.

8

plaintiff has created an issue of material fact as to whether the sprinkler was unreasonably dangerous.

In moving for summary judgment, defendant has produced evidence, including plaintiff's deposition,[13] affidavits,[14] photographs,[15] security surveillance video footage,[16] and an incident report,[17] to support its argument that no genuine issue of material fact exists as to whether the sprinkler head was open and obvious. Defendant also points to the lack of reported accidents related to the sprinkler.[18] In response, plaintiff relies on his own deposition testimony,[19] additional photographs,[20] and the testimony of Leonard Quick, a forensic engineer, to argue that the sprinkler was not sufficiently open and obvious, and could therefore present an unreasonable risk of harm.

Louisiana courts recognize that "[s]urfaces, such as curbs and sidewalks, are often irregular." *Thibodeaux*, 816 F. App'x at 991 (citing *Reed*, 708 So. 2d at 363). Applying this principle, courts have concluded that in

---

[13]   R. Doc. 32-4.
[14]   R. Doc. 32-5 (Affidavit of Harold McKenzie); R. Doc. 32-7 (Affidavit for Jeannine Richert).
[15]   R. Doc. 32-8; R. Doc. 32-11.
[16]   R. Doc. 32-6.
[17]   R. Doc. 32-11.
[18]   R. Doc. 32-1 ¶ 20.
[19]   R. Doc. 42-3.
[20]   R. Doc. 42-2.

certain circumstances, variances in the surfaces of parking lots, such as curbs, ledges, or potholes, do not create an unreasonable risk of harm. *See, e.g.*, *Llorence*, 76 So. 3d at 138 (affirming the trial court's finding that a pothole in the grocery store parking lot was not an "unreasonably harmful condition"); *Cordell v. Tanaka*, No. 17-285, 2018 WL 301331, at *5 (La. App. 1 Cir. Jan. 4, 2018) (granting summary judgment for defendants because a change in color of the ledge made it sufficiently "open and obvious"); *Nugent v. Car Town of Monroe, Inc.*, 206 So. 3d 369, 376-77 (La. App. 2 Cor. 2016) (finding that a 7.5-inch elevation change in the sidewalk did not create an unreasonable risk).

Louisiana courts also recognize that grounds adjacent to a sidewalk, which are not intended to be used as a walkway, are not "expected to have a completely 'table-top' smooth surface." *Wood v. Cambridge Mut. Fire Ins. Co.*, 486 So. 2d 1129, 1133 (La. App. 2 Cir. 1986). "Yards can and usually do have irregularities and minor obstacles such a depressions, drains, faucets, trees, shrubs, and tree roots[,] and are not intended or designed for use as a walkway without observation and care as are sidewalks and designated walkways." *Id.* Accordingly, courts have determined that alleged defects in landscaped areas, not designated as walkways, are open and obvious, and therefore do not present an unreasonable risk of harm to people exercising a

reasonable amount of care.  *See, e.g.*, *Alexander v. City of Lafayette*, 584 So. 2d 327, 328-29 (La. App. 3 Cir. 1991) (finding that an exposed tree root on the ground adjacent to the sidewalk did not present an unreasonable risk of harm); *Grossie v. MGM Properties, Inc.*, 269 So. 3d 921, 926 (La. App. 3 Cir. 2019) (holding that wood landscaping and metal stripping adjacent to a walkway were open and obvious); *Watts v. Scottsdale Ins. Co.*, 43 So. 3d 266, 269-70 (La. App. 2 Cir. 2010) (affirming a trial court's finding that a dark brown/green metal strip that lined a shady flower bed was open and obvious and thus not an unreasonably dangerous condition).

Here, the Court finds that plaintiff's evidence is not sufficient to create a genuine issue of fact as to whether the sprinkler head was unreasonably dangerous.  As shown by photographs taken the night of the accident,[21] the sprinkler head was raised seven inches above the ground and was next to a curb painted bright yellow, making it clearly visible.  And despite plaintiff's assertions otherwise,[22] the contemporaneous photographs show that the sprinkler head was unobstructed by any bushes in the area.[23]  It is also undisputed that the area was well lit by streetlights, and plaintiff testified

---

[21]   R. Doc. 32-11 at 10-13.

[22]   R. Doc. 32-4 at 46:5-22 (Badeaux's Deposition) (noting that the pictures from the night of the accident were "not accurate . . . because there were bushes around the sprinkler head").

[23]   R. Doc. 32-11 at 10-13.

that even at 3:00 a.m. the lights were shining close enough to his vehicle that he could see where he was walking.[24]  Moreover, when asked if he had seen the sprinkler before his fall, plaintiff admitted that he had not, because he did not "look down to see there wasn't anything in the landscaping."[25]

The Court additionally considers whether the size, location, and accident history of the sprinkler head create an issue of material fact as to whether the sprinkler head was open and obvious.  *See Leonard*, 2013 WL 121761, at *3.  First, the sprinkler head is approximately seven inches above the ground.[26]  Plaintiff testified that the sprinkler head was that height the night of his accident.[27]  Courts applying Louisiana law have held that similar height deviations are open and obvious, and are "easily observed and appreciated in the exercise of reasonable care."  *See, e.g.*, *Brown v. United States*, 861 F. Supp. 539, 542 (W.D. La. 1994) ("An exposed tree root, especially one that is raised three to four inches above the ground, is an obvious . . . and [an] easily avoidable risk."); *Nugent*, 206 So. 3d at 371-72

---

[24]    R. Doc. 32-4 at 62:16-24 (Badeaux's Deposition).

[25]    *Id.* at 61:13-25.

[26]    R. Doc. 32-1 ¶ 13 (Statement of Uncontested Facts); R. Doc. 42-1 ¶ 13; *see also* R. Doc. 32-4 at 48:2-6 (Badeaux's Deposition) (agreeing that the sprinkler head protruded that far above the ground when his fall occurred, and describing the sprinkler head's height as being "high" and "way up").

[27]    R. Doc. 32-4 at 48:2-5 (Badeaux's Deposition).

(holding that a slab that was 7.5 inches above the pavement was "open and obvious").

Second, defendant represents that prior to plaintiff's accident, there had never been a reported fall concerning any of the sprinkler heads in its parking lot.[28]  This lack of reported accidents also supports a finding that the sprinkler head was not unreasonably dangerous.  *See Williams v. Leonard Chabert Med. Ctr.*, 744 So. 2d 206, 210 (La. App. 1 Cir. 1999) ("The lack of prior accidents is an important factor to be considered in evaluating the risk of harm.").

Finally, the location of the sprinkler head further indicates that it is not an unreasonably dangerous condition.  It is uncontested that the sprinkler head is located "inside the landscaping area . . . next to the curb."[29]  Given that the island-like area was made up of bushes, trees, and mulch, surrounded by raised curbing, it was clearly not designed to be a walkway.[30]  However, plaintiff contends that, because his "particular parking spot sits directly adjacent to the garden area, a patron must walk through the garden

---

[28]    R. Doc. 32-1 ¶ 20; R. Doc. 32-9 ¶ 6 (Affidavit of Ross Jordan) ("[T]o his knowledge, in the years that Boomtown Casino New Orleans had been in operation, there has never been any reported problems with a pedestrian and the inground sprinkling system in the landscaping that borders the parking area . . . .").

[29]    R. Doc. 32-1 ¶ 13 (Statement of Uncontested Facts); R. Doc. 42-1 ¶ 13.

[30]    *See* R. Doc. 32-2 at 12.

area . . . with this exposed sprinkler head . . . to enter the Casino."[31]  Plaintiff

supports his assertion with the report of Leonard Quick, a forensic engineer,

who similarly contends that Mr. Badeaux "was forced to step upon the

immediately adjacent curb surrounding/bordering the landscaped area, and

into and through the landscaped area, due to defective design and/or

construction of the parking lot segment and associated dimensions of the

stalls."[32]

The Court finds that Mr. Quick's report does not create a genuine issue

of material fact or otherwise demonstrate that the location of the sprinkler

made it an unreasonably dangerous condition.  *See Williams v. Lib. Mut.*

*Fire Ins. Co.*, 217 So. 3d 421, 426-27 (La. App. 1 Cir. 2017) ("An expert's

opinion that is conclusory, . . . and which is based on little or no factual

support does not create a genuine issue of material fact.").  Mr. Quick

emphasizes that, based on his measurements, plaintiff had 16.45 inches to

walk between his vehicle and the curb, which he represents is "inadequate"

and "forced Mr. Badeaux to step up onto the curb and landscaped area."[33]  As

an initial matter, it is unclear why this distance is "inadequate." Mr. Quick

attaches various ordinances, but does not allege that defendant's parking

---

[31]    R. Doc. 42 at 4.

[32]    R. Doc. 32-8 at 2.

[33]    *Id.* at 4.

space violated any specific ordinances, building codes, or industry standards. *See id.* (finding that an expert's report "was conclusory with little or no factual report" where the expert "refer[ed] to many different safety codes" but did "not say how the curb or parking lot at issue violated any of the codes" or even if the codes were "applicable to [the] building").  Far from citing specific violations, Mr. Quick's report instead tries to argue that even if the parking stall complied with industry standards and Jefferson Parish parking-space requirements, it would still be unreasonably dangerous.[34]  Further, defendant has presented evidence that its parking lot was in compliance with all codes and regulations.  The "facilities and marine manager" at Boomtown Casino stated in an affidavit that, to his knowledge, "the design and construction of the hotel parking lot . . . complied with every ordinance, law and industry standard at the time of construction."[35]

Additionally, Mr. Quick fails to explain why 16.45 inches between plaintiff's car and the curb did not provide adequate room for Mr. Badeaux

---

[34]   *See id.* at 2-3 ("Even if the parking lot stalls complied with industry standards and Jefferson Parish parking space requirements dimensionally and with required striping designations, it is not only known but also expected that pedestrians will step up and walk upon/across landscaped areas within and long perimeters of parking lots.").

[35]   R. Doc. 32-9 ¶ 5 (Affidavit of Ross Jordan).

to walk between his car and the curb.[36]  The Court finds that the photographs attached to his report support the opposite conclusion, and show that plaintiff had room to walk on the concrete next to his car without having to step onto the curb, much less the landscaping.[37]  And even assuming that it was too narrow for plaintiff to walk on the surface of the parking lot, the curb on which plaintiff walked extends *past* the length of his car.[38]  Accordingly, plaintiff did not have to walk on the curb after he cleared the back end of his car.  Plaintiff could have stepped down once he passed the back of his car, and been completely off the curb by the time he reached the sprinkler head, which sits at the far end of the curb.  In sum, even taking plaintiff and Mr. Quick at their word as to the narrow gap between plaintiff's car and the curb, this was not a constraint near the location of the sprinkler head.  Therefore, the Court finds that the location of the sprinkler head was not unreasonably dangerous, and that Mr. Quick's conclusory statements to the contrary do not create a dispute of material fact.

For these reasons, considering the factors outlined by Louisiana law, the Court finds that record evidence establishes that the sprinkler head was open and obvious.  Therefore, defendant had no duty to protect plaintiff from

---

[36]   R. Doc. 32-8 at 2-3.

[37]   R. Doc. 32-8 at 20 (Photograph Nos. 23 & 24).

[38]   *See* R. Doc. 32-11 at 10-13.

the sprinkler head.  Because plaintiff has not met his burden to prove that the defect was unreasonably dangerous, the Court need not address the issue of causation.  *See Lester v. Valero Refining-Meraux, LLC*, No. 14-80, 2015 WL 729703, at *3 n.1 (E.D. La. Feb. 19, 2015) (refusing to address the remaining elements of custody, knowledge, and causation because the court granted defendant's motion for summary judgment on plaintiff's inability to prove that the condition posed an unreasonable risk).

## IV.   CONCLUSION

Accordingly, the Court GRANTS defendant's motion for summary judgment.  Plaintiff's complaint is DISMISSED.

New Orleans, Louisiana, this   18th   day of November, 2021.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

17